Gurpreet Kaur, Esq.
Kaur Legal Group, PC
674 County Square Dr, Suite 305
Ventura, CA 93003
Ph. 805-300-9003; Cell 909-997-4570
Fax: 805-716-6100
E-mail: gurpreetkauresq@gmail.com
*Attorney for Petitioner*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OMAR FIGUEROA-SANTOS<br><br>Petitioner,<br>v.<br>MARK BOWEN, Acting-Warden of the Adelanto Detention Center, DAVID J. VENTURELLA, Acting Director of Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States<br><br>Respondents. | Civil Action No.<br><br>**VERIFIED PETITION FOR HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner Figueroa-Santos, a native and citizen of Mexico, respectfully petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his unlawful arrest and continued detention by U.S. Immigration and Customs Enforcement ("ICE") and seeking his immediate release from immigration custody. Petitioner entered the United States without inspection in approximately 1993, was never apprehended or detained by immigration authorities at the time of entry, and thereafter established his life in the United States for approximately thirty-three years before ICE abruptly deprived him of his physical liberty on September 9, 2026, without advance notice, an

individualized custody determination, or any meaningful opportunity to contest the necessity of detention.

2. Unlike individuals apprehended at or near the border in connection with their initial entry, Petitioner was never encountered by immigration officers when he entered the United States in 1993. He was not subjected to immigration inspection, initial detention, parole, release on recognizance, or any other immigration custody determination at the time of entry. Instead, Petitioner entered without interaction with law enforcement and thereafter established substantial family, residential, employment, and community ties over the course of more than three decades.

3. Petitioner is married and is the father of three children, two of whom are United States citizens and one of whom is a Mexican national. He has maintained gainful employment with Senel Construction Engineering, contributing to his family's financial stability and supporting his household through gainful employment. Petitioner has no criminal history. His longstanding residence, substantial family responsibilities, stable employment, and absence of criminal conduct are directly relevant to whether his physical detention is necessary to address any legitimate governmental concern regarding danger to the community or risk of flight.

4. On September 9, 2026, Petitioner departed his residence to report to work at Senel Construction Engineering. As he exited his residential driveway, ICE officers stopped his vehicle and questioned him concerning his immigration status. Petitioner had not committed any traffic violation, and the officers did not identify any traffic-related offense or other unlawful conduct that would have justified the stop. Nevertheless, Petitioner complied with the officers' directions and provided his identification documents when requested.

5. Rather than permitting Petitioner to continue to his employment or providing him with an explanation of the legal or factual basis for his seizure, ICE officers immediately took him into

immigration custody. Petitioner was transported to an ICE office, where he inquired about the reasons for his arrest and detention. The officers did not provide him with a meaningful explanation or opportunity to contest the asserted grounds for depriving him of his liberty.

6. Petitioner received no advance notice that ICE intended to arrest or detain him, no individualized pre-deprivation hearing before a neutral decisionmaker, and no meaningful opportunity to demonstrate that he posed neither a danger to the community nor a risk of flight. His detention occurred notwithstanding his approximately thirty-three years of residence in the United States, his marriage, his three children, his established employment, and his complete absence of criminal history.

7. On October 9, 2026, approximately one month after ICE initially detained Petitioner, the Department of Homeland Security ("DHS") served him with a Notice to Appear ("NTA"), charging him solely under Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), based on his alleged presence in the United States without having been admitted or paroled. DHS did not charge Petitioner with any criminal offense, and the NTA did not allege that he presented a danger to the community or had violated any previously imposed conditions of immigration supervision.

8. The central statutory dispute concerns whether Petitioner's detention is governed by 8 U.S.C. § 1226(a), which generally authorizes discretionary detention pending removal proceedings and permits release on bond or conditional parole, or by 8 U.S.C. § 1225(b), which DHS has interpreted to require mandatory detention of certain individuals present in the United States without admission or parole. Petitioner maintains that his detention is properly governed by § 1226(a), particularly given that he was never apprehended at entry and had been living in the interior of the United States for approximately thirty-three years before his arrest.

9. On July 8, 2025, DHS issued Interim Guidance adopting a broader interpretation of § 1225(b), treating certain individuals who entered without inspection as subject to mandatory detention

notwithstanding their longstanding physical presence in the United States. DHS's interpretation has been reinforced by the Board of Immigration Appeals' decisions in *Matter of Yajure Hurtado* and *Matter of Q. Li*, which address the application of § 1225(b) to individuals present without admission. Petitioner challenges the application of that statutory interpretation to his circumstances and maintains that the Government cannot lawfully transform his decades-old entry without inspection into a basis for categorically denying him an individualized custody determination under § 1226(a).

10. Petitioner's circumstances materially distinguish him from an individual apprehended in connection with an attempted entry. Petitioner was never detained, inspected, or placed into immigration custody at the border in 1993. His first immigration detention occurred approximately thirty-three years later, when ICE officers stopped him outside his residence while he was attempting to report to work. The Government's asserted detention authority must therefore be evaluated in light of the statutory framework governing detention of individuals encountered in the interior of the United States while removal proceedings are pending, rather than by treating Petitioner's 1993 entry as though it constituted a contemporaneous border apprehension.

11. Independently of the statutory dispute, Petitioner's detention implicates the Due Process Clause of the Fifth Amendment. Freedom from physical restraint is a fundamental liberty interest, and the Government may not deprive an individual of that liberty without constitutionally adequate procedures. Petitioner's longstanding residence, substantial family and employment ties, lack of criminal history, and absence of any identified conduct suggesting danger or flight risk underscore the need for an individualized determination before the Government imposes the extraordinary restraint of physical detention.

12. Respondents provided Petitioner no meaningful pre-deprivation process before taking him into custody. They did not provide advance notice of an intended custody determination, did not

afford him an opportunity to present evidence concerning his family and community ties, and did not provide a hearing before a neutral decisionmaker at which the Government was required to justify the necessity of detention. Petitioner maintains that, under the particular circumstances of his longstanding residence and sudden arrest, constitutionally adequate pre-deprivation procedures were required, absent a demonstrated exigency justifying immediate detention.

13. The absence of such process is especially troubling because Petitioner was not apprehended while attempting to cross the border, was not fleeing immigration authorities, was not engaged in criminal conduct, and was not alleged to have violated any existing conditions of supervision. He was simply leaving his residence to attend work when ICE officers stopped his vehicle and immediately deprived him of his liberty.

14. Petitioner's challenge is not limited to the availability of a future bond hearing. A post-deprivation custody proceeding does not necessarily cure an unconstitutional arrest or an earlier deprivation of liberty imposed without the procedures required by the Fifth Amendment. Petitioner maintains that Respondents were required to provide constitutionally adequate notice and an individualized opportunity to contest the necessity of detention before depriving him of his liberty, or establish a legally sufficient justification for dispensing with those safeguards.

15. Petitioner's continued detention also imposes substantial hardship on his family. His detention abruptly interrupted his employment with Senel Construction Engineering, separated him from his spouse and three children, and deprived his household of his daily presence, support, and financial contributions. These consequences are particularly significant where Petitioner has no criminal history and Respondents have not provided an individualized determination establishing that detention is necessary.

16. Petitioner does not ask this Court to terminate his removal proceedings, determine his

eligibility for immigration relief, or interfere with the Immigration Judge's adjudication of removability. Rather, he challenges the legality of his physical detention, the statutory authority invoked to justify that detention, and Respondents' failure to provide constitutionally adequate procedures before depriving him of liberty.

17. Under these circumstances, Petitioner's arrest and continued detention violate the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. Petitioner therefore respectfully requests that this Court grant his petition for writ of habeas corpus and order his immediate release from immigration custody, subject to reasonable, noncustodial conditions of supervision if necessary. Petitioner seeks immediate restoration of his physical liberty as the primary remedy, rather than a remand for a post-deprivation custody redetermination that would leave the challenged deprivation of liberty unremedied.

## JURISDICTION

18. This action arises under the Constitution of the United States and the INA, 8 U.S.C. § 1101 *et seq.*

19. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

20. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

21. Venue is proper because Petitioner is detained in Adelanto Detention Center, which is within the jurisdiction of this District. Venue is also proper in this District because Respondents are officers, employees, or agencies of the United States. *See* 28 U.S.C. § 1391(e).

## PARTIES

22. Respondent Mark Bowen is sued in her official capacity as Warden of the Adelanto Detention Center. Respondent Bowen is the physical custodian of Petitioner.

23. Respondent David J. Venturella is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. Respondent Venturella is a legal custodian of Petitioner and has authority to release him.

24. Respondent Markwayne Mullin is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security. In this capacity, Respondent Mullin is responsible for the implementation and enforcement of the INA, and oversees ICE, the component agency responsible for Petitioner's detention and custody. Respondent Mullin is a legal custodian of Petitioner.

25. Respondent Todd Blanche is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice. In that capacity, he has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the BIA. Respondent Blanche is a legal custodian of Petitioner.

## STATEMENT OF FACTS

26. Petitioner Figueroa-Santos is a native and citizen of Mexico.

27. Petitioner entered the United States without inspection in approximately 1993.

28. At the time of his entry in 1993, Petitioner was not apprehended, detained, inspected, questioned, or otherwise encountered by immigration authorities or other law enforcement officers.

29. Petitioner entered the United States without any interaction with immigration or law enforcement personnel and was not placed into immigration custody at the time of his entry.

30. Because Petitioner was never apprehended at entry, DHS did not issue him an initial

custody determination, did not release him on parole or recognizance, and did not impose immigration supervision conditions in connection with his 1993 entry.

31. Following his entry, Petitioner established his life in the United States and remained in the country for approximately thirty-three years before his first immigration detention on September 9, 2026.

32. During those decades, Petitioner developed substantial family, residential, employment, and community ties in the United States.

33. Petitioner is married and is the father of three children.

34. Two of Petitioner's children are United States citizens, and his third child is a Mexican national.

35. Petitioner has substantial family responsibilities and provides support to his spouse and children.

36. Petitioner has maintained gainful employment with Senel Construction Engineering, a company engaged in construction-related work.

37. Through his employment, Petitioner has contributed to his household's financial stability and supported his family.

38. Petitioner has no criminal history.

39. Petitioner has not been convicted of any criminal offense and was not engaged in criminal conduct when ICE officers encountered him on September 9, 2026.

40. On September 9, 2026, Petitioner departed his residence intending to report to his employment with Senel Construction Engineering.

41. As Petitioner exited his residential driveway, ICE officers stopped his vehicle.

42. Petitioner had not committed any traffic violation or engaged in any conduct that he

understood to provide a lawful basis for a traffic stop.

43. ICE officers did not identify a traffic violation or explain any other factual or legal basis for stopping Petitioner's vehicle.

44. Petitioner complied with the officers' directions and brought his vehicle to a stop.

45. The officers immediately questioned Petitioner concerning his immigration status.

46. When requested, Petitioner provided his identification documents to the officers.

47. Petitioner cooperated with the officers and did not attempt to flee, resist, or obstruct their questioning.

48. After reviewing Petitioner's identification and questioning him concerning his immigration status, ICE officers immediately took him into custody.

49. Petitioner was not permitted to continue to his employment or otherwise proceed with his ordinary activities.

50. The officers did not provide Petitioner with a meaningful explanation of why immediate physical detention was necessary.

51. Petitioner was transported to an ICE office following his arrest.

52. After arriving at the ICE office, Petitioner asked the officers to explain the reasons for his arrest and detention.

53. The officers did not provide Petitioner with a meaningful explanation of the factual basis for his detention or an opportunity to contest the necessity of continued confinement.

54. Petitioner was not informed of any individualized finding that he presented a danger to the community or a risk of flight.

55. Before his arrest, Petitioner had not received advance notice that ICE intended to take him into immigration custody.

56. Petitioner was not afforded a pre-deprivation hearing before a neutral decisionmaker to determine whether physical detention was necessary.

57. Petitioner was not given an opportunity before detention to present evidence concerning his approximately thirty-three years of residence in the United States, his marriage, his children, his employment, his family responsibilities, or his lack of criminal history.

58. No individualized pre-deprivation proceeding was conducted at which Respondents were required to demonstrate that Petitioner posed a danger to the community or a risk of flight.

59. Petitioner was deprived of his physical liberty without advance notice, an individualized pre-deprivation hearing, or a meaningful opportunity to contest the necessity of detention.

60. At the time of his arrest, Petitioner was living in the interior of the United States and was not attempting to enter or reenter the country.

61. Petitioner's September 9, 2026 arrest occurred approximately thirty-three years after his entry without inspection in 1993.

62. Petitioner's detention was not the continuation of any immigration detention imposed at the time of entry because Petitioner had never been apprehended or detained in connection with his 1993 entry.

63. On October 9, 2026, DHS served Petitioner with a Notice to Appear initiating removal proceedings.

64. The Notice to Appear charges Petitioner solely under INA § 212(a)(6)(A)(i), alleging that he is present in the United States without having been admitted or paroled.

65. The Notice to Appear does not charge Petitioner with any criminal offense.

66. Petitioner has no criminal history, and Respondents have not provided him with an individualized pre-deprivation determination establishing that he presents a danger to the community

or a risk of flight.

67. On July 8, 2025, DHS issued Interim Guidance addressing the detention classification of certain individuals who entered the United States without inspection.

68. Under that guidance, DHS adopted an interpretation of 8 U.S.C. § 1225(b) treating certain individuals present without admission or parole as subject to mandatory detention, notwithstanding the length of their residence in the United States.

69. The Board of Immigration Appeals subsequently addressed the statutory detention framework applicable to such individuals in *Matter of Yajure Hurtado* and *Matter of Q. Li*.

70. Petitioner disputes the application of mandatory detention under § 1225(b) to his circumstances and maintains that his custody is properly governed by § 1226(a), which provides for individualized custody determinations while removal proceedings are pending.

71. Petitioner was not apprehended at the border in 1993, was not detained in connection with his initial entry, and was not the subject of any immigration custody determination at that time.

72. Instead, Petitioner's first immigration detention occurred on September 9, 2026, after approximately thirty-three years of residence in the United States, when ICE officers stopped him as he was leaving his home to report to work.

73. Petitioner's longstanding presence in the United States, established family and employment ties, and absence of criminal history are material considerations relevant to whether physical detention is necessary.

74. Respondents did not provide Petitioner with a meaningful individualized pre-deprivation hearing to evaluate those circumstances before taking him into custody.

75. Petitioner's detention has interrupted his employment with Senel Construction Engineering and separated him from his spouse and three children.

76. Petitioner's family has been deprived of his daily presence, financial support, and participation in household responsibilities during his confinement.

77. Petitioner has substantial incentives to remain in the United States, comply with lawful immigration requirements, and appear for future immigration proceedings, including his marriage, his children, his employment, and his longstanding community ties.

78. Petitioner's compliance with ICE officers during the September 9, 2026 encounter further demonstrates that he did not attempt to flee, resist, or obstruct immigration authorities when confronted.

79. Petitioner does not seek through this habeas proceeding to terminate his removal proceedings or obtain an adjudication of his eligibility for immigration relief.

80. Rather, Petitioner challenges the legality of his arrest and continued physical detention, the statutory authority asserted to justify his custody, and Respondents' failure to provide constitutionally adequate pre-deprivation procedures.

81. Petitioner maintains that his detention is governed by 8 U.S.C. § 1226(a), rather than the mandatory detention provisions of § 1225(b), and that his continued confinement without an individualized custody determination violates the Immigration and Nationality Act and the Fifth Amendment.

82. Petitioner further maintains that, under the circumstances of his decades-long residence, established family and employment ties, absence of criminal history, and sudden arrest while departing for work, Respondents were constitutionally required to afford him adequate pre-deprivation process or establish a legally sufficient justification for dispensing with that process.

83. Respondents failed to provide such process before depriving Petitioner of his liberty.

84. Petitioner's continued physical detention is therefore unlawful. Petitioner respectfully

seeks a writ of habeas corpus directing his immediate release from immigration custody, subject to reasonable, noncustodial conditions of supervision if necessary, rather than a remand for a post-deprivation bond hearing as the primary remedy.

**STATUTORY FRAMEWORK**

85. The INA prescribes three basic forms of detention for noncitizens in removal proceedings. First, 8 U.S.C. § 1226(a) authorizes the detention of noncitizens in standard non-expedited removal proceedings before an IJ. *See* 8 U.S.C. § 1226(a); 8 U.S.C. § 1229a. Individuals in section 1226(a) detention are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

86. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under 8 U.S.C. § 1225(b)(2).

87. Finally, the INA also provides for detention of noncitizens who are subject to final orders of removal, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b). The detention provisions at section 1226(a) and 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(c) was most recently amended earlier this year by the Laken Riley Act ("LRA"), Pub. L. No. 119-1, 139 Stat. 3 (2025).

88. Following enactment of the IIRIRA, the EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under section 1225 and that they were instead detained under section 1226(a). *See* Inspection and Expedited

Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In the decades that followed, most noncitizens who entered without inspection—unless they were subject to some other detention authority—received bond hearings. This practice was also consistent with the practice prior to the enactment of the IIRIRA, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that section 1226(a) simply "restates" the detention authority previously found at section 1252(a)).

89. On July 8, 2025, DHS issued a memo to all employees of ICE stating that "[t]his message serves as notice that DHS, in coordination with the Department of Justice (DOJ), has revisited its legal position on detention and release authorities. DHS has determined that section 235 of the Immigration and Nationality Act (INA) [8 U.S.C. § 1225], rather than section 236 [8 U.S.C. § 1226], is the applicable immigration detention authority for all applicants for admission. The following interim guidance is intended to ensure immediate and consistent application of the Department's legal interpretation while additional operational guidance is developed." The memo further stated DHS' new position with regard to custody determinations as follows:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1) [8 U.S.C. § 1225(a)(1)]. **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) [8 U.S.C. § 1225(b)] and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated. **The only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) [8 U.S.C. § 1226(a)] during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c) [8 U.S.C. § 1226(c)]**.

> Moving forward, ICE will not issue Form I-286, Notice of Custody Determination, to applicants for admission because Form I-286 applies by its terms only to custody determinations under INA § 236 and part 236 of Title 8 of the Code of Federal Regulations. With a limited exception for certain habeas petitioners, on which the Office of the Principal Legal Advisor (OPLA) will individually advise, if Enforcement and Removal Operations (ERO) previously conducted a custody determination for an applicant for admission still detained in ICE custody, ERO will affirmatively cancel the Form I-286. *See* https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last accessed October 18, 2025) (emphasis original).

90. As a result, DHS now considers all noncitizens who have entered the United States without inspection and are subject to the grounds of inadmissibility, including long-time U.S. residents, to be subject to mandatory detention under section 1225(b) and ineligible for release on bond. Conversely, according to DHS "[t]he only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) [8 U.S.C. § 1226(a)] during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c) [8 U.S.C. § 1226(c)]." *Id.*

91. Shortly thereafter, the Board of Immigration Appeals ("BIA") issued decisions reflecting the same interpretation. In Matter of Q. Li, 29 I&N Dec. 66 (BIA 2025) and Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), the Board concluded that Immigration Judges lack bond authority over certain noncitizens present in the United States without admission because, in the Board's view, § 1225(b)(2)(A) mandates detention of such "applicants for admission" during removal proceedings.

92. The Ninth Circuit has squarely rejected DHS's interpretation that individuals present in the United States without admission, who are subsequently apprehended in the interior of the country, are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). In Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026), the Court held that such individuals are not subject to mandatory

detention under § 1225(b)(2)(A). Petitioner's circumstances fall squarely within that holding: he entered without inspection in approximately 1993, was never apprehended at entry, and was first taken into immigration custody approximately thirty-three years later, in the interior of the United States. Accordingly, his detention is governed by § 1226(a), absent another applicable statutory basis for mandatory detention.

93. Petitioner Figueroa-Santos, a native and citizen of Mexico, entered the United States without inspection in approximately 1993. Petitioner was never apprehended, detained, inspected, or otherwise encountered by immigration authorities or law enforcement officers at the time of his entry. He was not placed into immigration custody at or near the border, was not issued an initial custody determination, and was not released on parole, recognizance, or bond. Instead, Petitioner entered the United States without any interaction with law enforcement and thereafter established his life in the United States for approximately thirty-three years before ICE first detained him on September 9, 2026.

94. Following his entry in 1993, Petitioner established substantial family, residential, employment, and community ties in the United States. He is married and is the father of three children, two of whom are United States citizens and one of whom is a Mexican national. Petitioner has maintained gainful employment with Senel Construction Engineering, supporting his family and contributing to his household's financial stability. Petitioner has no criminal history and has not been convicted of any criminal offense.

95. For approximately thirty-three years following his entry, Petitioner lived in the United States without having been apprehended or placed into immigration custody in connection with his 1993 entry. Unlike an individual apprehended while attempting to enter the country, Petitioner was never subjected to a contemporaneous border inspection, detention determination, or immigration enforcement proceeding at the time of his entry. His first immigration detention occurred decades later,

when ICE officers encountered him in the interior of the United States while he was leaving his residence to report to work.

96. On September 9, 2026, Petitioner departed his residence intending to report to his employment with Senel Construction Engineering. As Petitioner exited his residential driveway, ICE officers stopped his vehicle. Petitioner had not committed any traffic violation, and the officers did not identify any traffic-related offense or other unlawful conduct that would have justified the stop. Nevertheless, Petitioner complied with the officers' directions, stopped his vehicle, and cooperated with their questioning.

97. Upon stopping Petitioner, ICE officers immediately questioned him concerning his immigration status. Petitioner complied with their requests and provided his identification documents. Despite Petitioner's cooperation, the officers immediately took him into immigration custody, preventing him from continuing to his employment. Petitioner did not attempt to flee, resist, obstruct, or evade the officers.

98. Following his arrest, Petitioner was transported to an ICE office. Once there, Petitioner asked the officers to explain the reasons for his arrest and detention. The officers did not provide him with a meaningful explanation of the factual or legal basis for his confinement or an opportunity to contest the necessity of his detention. Petitioner was not informed of any individualized determination that he presented a danger to the community or a risk of flight.

99. Prior to September 9, 2026, Petitioner received no advance notice that ICE intended to arrest or detain him. Respondents did not provide Petitioner with an individualized pre-deprivation hearing before a neutral decisionmaker, did not afford him an opportunity to present evidence concerning his family and community ties, and did not permit him to contest whether physical detention was necessary. Petitioner was thus deprived of his physical liberty without advance notice or

meaningful pre-deprivation process.

100. Petitioner's arrest was particularly consequential because he had established his life in the United States over approximately thirty-three years. He was gainfully employed, married, supporting his family, and raising three children, including two United States citizens. His detention abruptly interrupted his employment, separated him from his family, and deprived his household of his daily presence and financial support, notwithstanding his complete absence of criminal history.

101. On October 9, 2026, approximately one month after Petitioner's initial detention, DHS served him with a Notice to Appear ("NTA"), charging him solely under INA § 212(a)(6)(A)(i), based on his alleged presence in the United States without having been admitted or paroled. Petitioner was not charged with any criminal offense, and the NTA did not identify any criminal conduct or violation of previously imposed immigration supervision conditions.

102. At the time ICE detained Petitioner on September 9, 2026, the governing statutory detention authority was disputed. Petitioner maintains that his detention is properly governed by 8 U.S.C. § 1226(a), which authorizes discretionary detention during pending removal proceedings and provides for individualized custody determinations, rather than 8 U.S.C. § 1225(b), which DHS has interpreted to require mandatory detention of certain individuals present in the United States without admission or parole.

103. On July 8, 2025, DHS issued Interim Guidance adopting a broader interpretation of § 1225(b), treating certain individuals who entered without inspection as subject to mandatory detention notwithstanding their longstanding residence in the United States. Under that interpretation, individuals who have lived in the interior of the country for years or decades may be classified as subject to mandatory detention based upon their historical entry without inspection.

104. The Board of Immigration Appeals subsequently addressed the application of the

statutory detention framework in Matter of Yajure Hurtado and Matter of Q. Li. Those decisions reflect the agency's interpretation of § 1225(b) as applicable to certain individuals present in the United States without admission or parole. Petitioner disputes the correctness and application of that interpretation to his circumstances and maintains that the statutory distinction between § 1225(b) and § 1226(a) must be resolved through independent judicial review.

105. Petitioner's circumstances are materially distinguishable from those of an individual apprehended in connection with an attempted entry. Petitioner entered the United States in 1993 without any encounter with immigration authorities, was never subjected to border detention, and was never placed into immigration custody in connection with that entry. His first immigration arrest occurred approximately thirty-three years later, when ICE officers stopped him as he exited his residential driveway to report to work.

106. Petitioner maintains that his detention must be evaluated under the statutory framework governing immigration arrests and detention in the interior of the United States while removal proceedings are pending. The mere historical fact of Petitioner's entry without inspection in 1993 should not, standing alone, automatically subject him to mandatory detention under § 1225(b) without consideration of the statutory structure, his longstanding presence, and the circumstances of his first immigration apprehension.

107. The Government's interpretation would permit ICE to arrest and categorically detain a person who has lived in the United States for more than three decades without providing any individualized custody determination, solely because that individual originally entered without inspection. Petitioner challenges that interpretation as inconsistent with the statutory detention framework and maintains that § 1226(a) governs his custody.

108. Independently of the statutory dispute, Petitioner's detention implicates the fundamental

liberty interest protected by the Due Process Clause of the Fifth Amendment. Freedom from physical restraint lies at the core of the liberty protected by due process. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Civil immigration detention must therefore remain reasonably related to its permissible purposes and must comport with constitutionally adequate procedural safeguards.

109. Due process requires procedures appropriate to the nature and circumstances of the deprivation. *See Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976). In determining what process is constitutionally required, courts consider the private interest affected, the risk of erroneous deprivation under existing procedures, the probable value of additional safeguards, and the Government's competing interests.

110. Here, Petitioner's private liberty interest is substantial. He lived in the United States for approximately thirty-three years without being apprehended at entry, established a family, maintained employment, and developed substantial ties to his community. He has no criminal history and was not engaged in criminal conduct when ICE officers stopped him on September 9, 2026. His sudden arrest and detention deprived him of his physical liberty, interrupted his livelihood, and separated him from his spouse and children.

111. Respondents provided Petitioner no meaningful individualized pre-deprivation process before taking him into custody. They did not provide advance notice of an intended custody determination, did not afford him an opportunity to demonstrate that he posed neither a danger to the community nor a risk of flight, and did not provide a hearing before a neutral decisionmaker at which the necessity of detention could be evaluated.

112. Petitioner maintains that, under the particular circumstances of his approximately thirty-three years of residence, established family and employment ties, absence of criminal history, and arrest while departing for work, Respondents were constitutionally required to provide adequate pre-

deprivation notice and an individualized opportunity to contest the necessity of detention, absent a demonstrated exigency or other legally sufficient justification for dispensing with those safeguards.

113. Respondents did not identify to Petitioner any individualized circumstances demonstrating that immediate detention was necessary to prevent flight or protect the community. Petitioner was not attempting to evade immigration authorities, had not committed a traffic offense, and did not resist or obstruct the officers. Rather, he complied with their instructions and provided identification when requested.

114. Petitioner's cooperation during the September 9, 2026 encounter is relevant to any individualized assessment of flight risk. When confronted by ICE officers, Petitioner stopped his vehicle, provided identification, and complied with their directions. His conduct did not demonstrate an attempt to flee or evade law enforcement.

115. Petitioner's longstanding family and community ties further support his ability and willingness to comply with lawful immigration requirements. He is married, has three children, including two United States citizens, and has maintained gainful employment with Senel Construction Engineering. These circumstances provide substantial incentives to remain available for immigration proceedings and to comply with reasonable conditions of supervision.

116. Moreover, Petitioner's complete absence of criminal history weighs against any generalized assertion that he presents a danger to the community. Respondents have not provided Petitioner with an individualized pre-deprivation determination establishing that physical confinement is necessary to address any specific danger or risk of nonappearance.

117. Petitioner's challenge is not limited to whether he might eventually receive a post-deprivation custody hearing. Petitioner maintains that the constitutional injury arose when Respondents deprived him of his established physical liberty without the process required under the circumstances.

A subsequent bond hearing does not necessarily remedy an earlier unconstitutional deprivation of liberty. Petitioner therefore seeks relief directed at the legality of his arrest and continued physical confinement.

118. The circumstances of Petitioner's vehicle stop also raise substantial questions concerning the lawfulness of the initial seizure. ICE officers stopped Petitioner as he exited his residential driveway, without identifying a traffic violation or explaining any other basis for the stop. Petitioner maintains that the legality of this encounter must be evaluated under the Fourth Amendment and the statutory limitations governing warrantless immigration arrests, including 8 U.S.C. § 1357(a)(2), as applicable.

119. Petitioner does not ask this Court to adjudicate his removability, determine his eligibility for adjustment of status or other immigration relief, or interfere with the Immigration Judge's adjudication of his removal proceedings. Those matters remain properly within the immigration adjudication process.

120. Petitioner instead challenges his arrest and continued physical detention, the statutory authority asserted to justify his custody, and Respondents' failure to provide constitutionally adequate individualized procedures before depriving him of liberty. He maintains that the Government may not rely solely upon his 1993 entry without inspection to justify mandatory physical detention decades later without judicial examination of the governing statute and constitutional safeguards.

121. Petitioner's circumstances warrant immediate habeas relief. He was never apprehended at entry, has resided in the United States for approximately thirty-three years, has no criminal history, maintains substantial family and employment ties, and was detained while leaving his residence to report to work. Respondents provided no individualized pre-deprivation hearing or meaningful opportunity to contest the necessity of detention. Petitioner maintains that his confinement is unlawful

under the Immigration and Nationality Act and the Fifth Amendment.

122. Accordingly, Petitioner respectfully seeks a writ of habeas corpus directing his immediate release from immigration custody, subject to reasonable, noncustodial conditions of supervision if the Court deems appropriate. Petitioner seeks restoration of his physical liberty as the primary remedy, rather than a remand for a post-deprivation bond hearing that would leave the challenged deprivation of liberty unremedied.

## CLAIMS FOR RELIEF

## COUNT ONE

### Violation of Petitioner's Procedural Due Process Rights Under the Fifth Amendment

123. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

124. The Fifth Amendment prohibits the Government from depriving any person of liberty without due process of law.

125. Under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), courts evaluate procedural due process claims by considering: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures employed and the probable value of additional safeguards; and (3) the Government's interests, including the administrative burdens associated with additional procedures.

126. The private interest at stake here—freedom from physical detention—is among the most fundamental liberty interests protected by the Constitution. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

127. Petitioner entered the United States without inspection in approximately 1993. He was never apprehended, detained, inspected, or otherwise encountered by immigration authorities at the time of entry. He was not subjected to an initial immigration custody determination, released on parole or recognizance, or placed under immigration supervision in connection with his entry. Instead, he established his life in the United States for approximately thirty-three years before his first immigration detention.

128. During those decades, Petitioner established substantial family, employment, and community ties. He is married, has three children, two of whom are United States citizens, and maintains

gainful employment with Senel Construction Engineering. Petitioner has no criminal history.

129. On September 9, 2026, Petitioner was leaving his residence to report to work when ICE officers stopped his vehicle as he exited his residential driveway. Petitioner had not committed any traffic violation, and the officers did not identify any traffic-related offense or explain another basis for the stop.

130. Petitioner complied with the officers' directions, stopped his vehicle, and provided his identification documents when requested. Despite his cooperation, ICE officers immediately took him into immigration custody, preventing him from proceeding to work.

131. Following his arrest, Petitioner was transported to an ICE office, where he asked the officers to explain the reasons for his detention. The officers did not provide him with a meaningful explanation or afford him an opportunity to contest the necessity of his confinement.

132. Petitioner received no advance notice of an intended custody determination, no individualized pre-deprivation hearing before a neutral decisionmaker, and no meaningful opportunity to present evidence concerning his longstanding residence, family responsibilities, employment, lack of criminal history, or absence of flight risk.

133. On October 9, 2026, approximately one month after his arrest, DHS served Petitioner with a Notice to Appear charging him solely under INA § 212(a)(6)(A)(i), based on his alleged presence without admission or parole.

134. Petitioner maintains that his detention is governed by 8 U.S.C. § 1226(a), rather than § 1225(b), and that Respondents improperly subjected him to mandatory detention without providing an individualized custody determination.

135. The risk of erroneous deprivation is substantial where an individual who has resided in the United States for approximately thirty-three years, has no criminal history, and possesses substantial family and employment ties is abruptly deprived of physical liberty without a meaningful individualized assessment of whether detention is necessary.

136. Additional procedural safeguards, including advance notice and an opportunity to contest the necessity of detention before a neutral decisionmaker, would have permitted consideration of Petitioner's longstanding residence, family responsibilities, stable employment, lack of criminal history, and willingness to comply with immigration authorities.

137. Those circumstances are directly relevant to determining whether Petitioner presents a danger to the community or risk of flight and whether reasonable, noncustodial conditions could adequately serve the Government's legitimate interests.

138. Petitioner's conduct during the September 9, 2026 encounter further demonstrates his willingness to comply with law enforcement. He stopped when directed, provided identification, and did not attempt to flee, resist, or obstruct the officers.

139. Petitioner's cooperation, together with his substantial family and community ties, weighs against any unsupported inference that immediate physical confinement was necessary to secure his future appearance.

140. The risk of erroneous deprivation is particularly acute because Respondents imposed physical detention without affording Petitioner an individualized opportunity to establish that he posed neither a danger to the community nor a risk of flight.

141. The Government undoubtedly possesses legitimate interests in enforcing immigration laws, securing appearances in removal proceedings, and protecting the community. Petitioner maintains, however, that under the circumstances of his longstanding residence, established family and employment ties, absence of criminal history, and arrest while departing for work, those interests did not justify dispensing with constitutionally adequate pre-deprivation procedures absent a demonstrated exigency or other legally sufficient justification.

142. Petitioner does not seek adjudication by this Court of his removability or entitlement to immigration relief. He seeks constitutionally adequate process concerning the distinct deprivation of his physical liberty.

143. Respondents' detention of Petitioner without constitutionally adequate individualized pre-deprivation process, and without establishing a legally sufficient basis for dispensing with that process, violates the Due Process Clause of the Fifth Amendment.

144. A post-deprivation custody proceeding does not necessarily remedy an earlier unconstitutional deprivation of liberty. Petitioner challenges the legality of the initial deprivation and his resulting continued physical confinement, rather than merely asserting statutory eligibility to request release.

145. Habeas corpus provides a remedy for unlawful physical custody. Under the circumstances presented, Petitioner respectfully requests immediate release from immigration detention, subject to reasonable conditions of supervision if necessary, rather than continuation of the challenged confinement while he pursues a post-deprivation administrative custody proceeding.

**COUNT TWO**

**Violation of Fifth Amendment Right to Substantive Due Process**

146. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

147. The Fifth Amendment provides that no person shall be deprived of liberty without due process of law. U.S. Const. amend. V. Freedom from physical restraint lies at the core of the liberty protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

148. Civil immigration detention is nonpunitive and must remain reasonably related to a legitimate governmental purpose. Petitioner maintains that detention imposed arbitrarily or in a manner that is excessive in relation to its permissible civil purposes violates substantive due process.

149. Petitioner entered the United States without inspection in approximately 1993 and was never apprehended or detained by immigration authorities at the time of entry. He thereafter lived in the United States for approximately thirty-three years before ICE first detained him.

150. During that period, Petitioner established substantial family and community ties, maintained gainful employment with Senel Construction Engineering, married, and became the father of three children, including two United States citizens. Petitioner has no criminal history.

151. On September 9, 2026, ICE officers stopped Petitioner as he exited his residential driveway while attempting to report to work. Petitioner had not committed a traffic violation, and the officers did not identify any unlawful conduct justifying the vehicle stop.

152. Petitioner complied with the officers' directions and provided identification when requested. He did not attempt to flee, resist, obstruct, or evade the officers.

153. Nevertheless, ICE officers immediately arrested Petitioner and transported him to an ICE office, where he was not afforded a meaningful opportunity to contest the necessity of his detention.

154. Petitioner was not provided an individualized pre-deprivation hearing or determination establishing that he presented a danger to the community or risk of flight.

155. Petitioner's detention must be evaluated in light of the legitimate civil purposes immigration detention is intended to serve, including securing appearance at removal proceedings and protecting the community.

156. Petitioner presents substantial individualized circumstances weighing against the necessity of physical confinement. He has resided in the United States for approximately thirty-three years, maintains substantial family responsibilities, is gainfully employed, has no criminal history, and cooperated with ICE officers during his arrest.

157. Petitioner's marriage, three children, employment, and longstanding community ties

provide substantial incentives to remain available for immigration proceedings and comply with lawful reporting and supervision requirements.

158. Respondents have not provided Petitioner with an individualized pre-deprivation determination establishing that his physical detention was necessary to address a particularized danger to the community or risk of flight.

159. Petitioner's historical entry without inspection in 1993, standing alone, does not establish that he presently poses a danger to the community or is likely to evade immigration proceedings.

160. Petitioner's actual conduct during the September 9, 2026 encounter weighs against any unsupported inference of noncompliance. When ICE officers stopped him, he complied with their directions and provided identification.

161. The Government possesses legitimate interests in enforcing immigration laws, ensuring appearances at immigration proceedings, and protecting the community. Petitioner maintains, however, that civil detention must remain reasonably related to those purposes and may not be imposed arbitrarily or as punishment.

162. Under the circumstances presented, Petitioner maintains that his sudden detention after approximately thirty-three years of residence, without an individualized determination of necessity and despite his absence of criminal history and substantial family and employment ties, constitutes an arbitrary and excessive deprivation of physical liberty.

163. Petitioner's continued detention therefore violates the substantive component of the Fifth Amendment's Due Process Clause.

164. Accordingly, Petitioner seeks immediate release from physical custody, subject to reasonable conditions of supervision if appropriate.

## COUNT THREE

### Violation of the Immigration and Nationality Act — Unlawful Detention Under 8 U.S.C. § 1225(b) Rather Than § 1226(a)

165. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

166. Petitioner entered the United States without inspection in approximately 1993 and was not apprehended, detained, inspected, or otherwise encountered by immigration authorities at the time of his entry.

167. Petitioner thereafter resided in the interior of the United States for approximately thirty-

three years before ICE took him into custody on September 9, 2026.

168. Petitioner's September 9, 2026 detention was his first immigration detention and did not arise from an apprehension at or near the border in connection with his 1993 entry.

169. On October 9, 2026, DHS served Petitioner with a Notice to Appear charging him solely under INA § 212(a)(6)(A)(i), based on his alleged presence in the United States without admission or parole.

170. Petitioner is subject to removal proceedings under INA § 240, and his detention must be authorized by the statutory provisions applicable to his circumstances.

171. The Immigration and Nationality Act establishes distinct statutory frameworks governing detention under 8 U.S.C. §§ 1225 and 1226.

172. Section 1225(b) prescribes detention requirements for certain applicants for admission, while § 1226(a) authorizes discretionary arrest and detention pending a decision concerning removability and expressly contemplates release on bond or conditional parole.

173. Petitioner contends that his detention is properly governed by **8 U.S.C. § 1226(a)** because ICE first apprehended him in the interior of the United States approximately thirty-three years after his entry, rather than in connection with an attempted entry at the border.

174. Section 1226(a) authorizes arrest and detention of a noncitizen “pending a decision on whether the alien is to be removed from the United States” and permits release on bond or conditional parole, subject to statutory requirements.

175. Petitioner is awaiting a determination of removability in proceedings initiated by the October 9, 2026 Notice to Appear. He maintains that the discretionary detention framework of § 1226(a), rather than mandatory detention under § 1225(b), governs his custody.

176. Petitioner has no criminal history, and the facts alleged do not establish that he is subject to mandatory criminal detention under 8 U.S.C. § 1226(c).

177. On July 8, 2025, DHS issued Interim Guidance adopting a broader interpretation of § 1225(b), treating certain individuals who entered without inspection as subject to mandatory detention notwithstanding their longstanding residence in the United States.

178. The Board of Immigration Appeals subsequently addressed the application of § 1225(b) to individuals present without admission in *Matter of Yajure Hurtado* and *Matter of Q. Li*. Petitioner acknowledges the agency's contrary interpretation but maintains that it is inconsistent with the proper construction of the INA as applied to his circumstances and does not foreclose independent federal judicial

review of his detention.

179. Respondents' application of mandatory detention under § 1225(b), rather than the discretionary detention framework of § 1226(a), unlawfully deprives Petitioner of the individualized custody determination and potential release authorized by the governing statute. Petitioner therefore seeks habeas relief under 28 U.S.C. § 2241, including immediate release from unlawful detention.

**COUNT FOUR**

**Violation of the Administrative Procedure Act — Arbitrary and Capricious Application of Detention Policy**

180. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

181. Petitioner invokes 28 U.S.C. § 1331 and 5 U.S.C. §§ 702, 704, and 706 to the extent applicable and subject to any jurisdictional limitations governing judicial review of immigration custody determinations.

182. Respondents continue to detain Petitioner following his September 9, 2026 arrest, notwithstanding his approximately thirty-three years of residence, substantial family and employment ties, absence of criminal history, and the lack of an individualized pre-deprivation custody hearing.

183. Petitioner's detention occurred after DHS issued its July 8, 2025 Interim Guidance interpreting 8 U.S.C. § 1225(b) to require mandatory detention of certain individuals who entered without inspection.

184. Under 5 U.S.C. § 706(2)(A) and (C), reviewable agency action may be set aside when it is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, or in excess of statutory authority.

185. Petitioner maintains that Respondents' application of the July 8, 2025 detention policy to his circumstances is contrary to the INA because his custody is properly governed by § 1226(a), rather than § 1225(b).

186. Respondents' treatment of Petitioner's detention as mandatory fails to provide an individualized custody determination addressing highly relevant circumstances, including:

a. Petitioner's entry without inspection in approximately 1993, without apprehension or detention by immigration authorities;

b. Petitioner's approximately thirty-three years of residence in the United States;

c. Petitioner's marriage and substantial family responsibilities;

d. Petitioner's three children, including two United States citizens;

e. Petitioner's gainful employment with Senel Construction Engineering;

f. Petitioner's complete absence of criminal history;

g. Petitioner's cooperation with ICE officers during the September 9, 2026 encounter; and

h. The absence of any individualized pre-deprivation determination establishing that physical detention was necessary to prevent flight or protect the community.

187. Petitioner's September 9, 2026 encounter is particularly significant. ICE officers stopped him as he exited his residential driveway to report to work. Petitioner complied with their instructions, provided identification, and did not attempt to flee or resist. His detention was not occasioned by any identified criminal offense or violation of previously imposed immigration supervision conditions.

188. Petitioner contends that Respondents' categorical application of mandatory detention under § 1225(b), without permitting the individualized custody determination contemplated by § 1226(a), constitutes agency action contrary to the governing statutory framework.

189. To the extent Respondents rely upon the July 8, 2025 Interim Guidance or subsequent agency interpretations to impose mandatory detention beyond the authority conferred by the INA, Petitioner maintains that such action is contrary to law and exceeds statutory authority.

190. Petitioner has suffered and continues to suffer a concrete deprivation of physical liberty as a direct result of Respondents' continued detention.

191. Accordingly, to the extent judicial review is available under the Administrative Procedure Act, Petitioner requests that the Court set aside unlawful agency action pursuant to 5 U.S.C. § 706 and grant appropriate relief, including Petitioner's immediate release from physical custody.

## COUNT FIVE

## Violation of the Fourth Amendment — Unlawful Seizure and Warrantless Arrest

192. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

193. The Fourth Amendment protects individuals against unreasonable searches and seizures, including seizures conducted by immigration enforcement officers. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 884–85 (1975).

194. On September 9, 2026, ICE officers stopped Petitioner as he exited his residential driveway while traveling to his employment with Senel Construction Engineering. Petitioner had committed no

traffic violation, and the officers did not identify any specific, articulable facts establishing reasonable suspicion of unlawful activity sufficient to justify the stop.

195. Petitioner complied with the officers' directions and provided his identification documents. Nevertheless, ICE officers immediately arrested him and transported him to an ICE office without providing a meaningful explanation of the factual or legal basis for his arrest.

196. Under 8 U.S.C. § 1357(a)(2), a warrantless immigration arrest must satisfy statutory requirements, including reason to believe that the individual is unlawfully present and likely to escape before a warrant can be obtained. Petitioner maintains that Respondents lacked the requisite justification for his warrantless arrest, to the extent no valid warrant authorized it.

197. Petitioner had resided in the United States for approximately thirty-three years, maintained stable employment and substantial family ties, had no criminal history, and cooperated fully with the officers. Respondents identified no individualized circumstances demonstrating that Petitioner was likely to escape before a warrant could be obtained.

198. Accordingly, Petitioner contends that his initial seizure and subsequent arrest violated the Fourth Amendment and the statutory limitations governing warrantless immigration arrests. Petitioner requests appropriate habeas relief, including immediate release from unlawful custody to the extent warranted by these violations.

## PRAYER FOR RELIEF

Wherefore, Petitioner requests this Court to grant the following:

1. Assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241;

2. Enjoin Respondents from transferring Petitioner outside the jurisdiction of this Court during the pendency of these proceedings absent prior authorization from this Court;

3. Declare that Respondents' arrest and continued detention of Petitioner, following approximately thirty-three years of residence in the United States without apprehension at the time of entry, violate the Fifth Amendment's guarantees of procedural and substantive due process, the Immigration and Nationality Act, and, to the extent applicable, the Administrative Procedure Act;

4. Declare that Petitioner's detention is governed by 8 U.S.C. § 1226(a), rather than 8 U.S.C.

§ 1225(b), and that Respondents may not subject Petitioner to mandatory detention solely based upon his 1993 entry without inspection, where he was never apprehended at entry and was first taken into immigration custody in the interior of the United States on September 9, 2026;

5. Declare that Respondents' seizure and arrest of Petitioner violated the Fourth Amendment and, to the extent the arrest was conducted without a warrant, the statutory requirements of 8 U.S.C. § 1357(a)(2), insofar as the evidence establishes that the officers lacked the requisite legal justification;

6. Vacate and set aside any unlawful custody determination or reviewable agency action maintaining Petitioner's detention that is contrary to law, arbitrary and capricious, or in excess of statutory authority, pursuant to 5 U.S.C. § 706, to the extent judicial review is available;

7. Order Petitioner's immediate release from ICE custody, subject to reasonable, noncustodial conditions of supervision if the Court deems such conditions appropriate;

8. Enjoin Respondents from continuing to detain Petitioner without lawful statutory authority and constitutionally adequate individualized process, including the pre-deprivation safeguards required under the circumstances;

9. Enjoin Respondents from re-detaining Petitioner following his release based upon the same circumstances, absent materially changed circumstances and constitutionally adequate notice and an opportunity to be heard before a neutral decisionmaker, except where a legally sufficient exigency justifies immediate action;

10. In the alternative, only if the Court declines to order immediate release, direct Respondents to provide Petitioner with an individualized bond hearing before a neutral immigration judge within seven days, at which the Government bears the burden of establishing by clear and convincing evidence that continued detention is necessary to address a danger to the community or risk of flight, and at which reasonable alternatives to detention must be considered;

11. Award Petitioner reasonable attorneys' fees, costs, and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, to the extent authorized by law;

12. Retain jurisdiction to enforce any order entered in this matter; and

13. Grant such other and further relief as this Court deems just, proper, and equitable.

Respectfully,

/s/ *Gurpreet Kaur*
Gurpreet Kaur, Esq.
Attorney for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am counsel for Petitioner, and I submit this verification on his behalf. Because Petitioner is detained at the Adelanto Detention Center and immediate relief is sought, counsel verifies this petition on his behalf pursuant to 28 U.S.C. § 2242. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 20th day of October, 2026.

/s/ *Gurpreet Kaur*
Gurpreet Kaur, Esq.