UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

OMAR FIGUEROA-SANTOS,

Petitioner,

v.

MARK BOWEN, et al.,

Respondents.

Case No. 5:26-cv-06188-KES

ORDER GRANTING THE PETITION IN PART AND ORDERING PETITIONER'S RELEASE FROM CUSTODY

## I. INTRODUCTION

Omar Figueroa-Santos ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). Respondents answered the Petition ("Answer" at Dkt. 9), and Petitioner replied ("Reply" at Dkt. 10). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 8.)

The Petition is granted in part, and Respondents are directed to immediately release Petitioner from custody.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Entry and Life in the U.S. (1993-2026).

Petitioner is a native and citizen of Mexico. (Pet. at 7, ¶ 26.) Petitioner entered the U.S. without inspection in approximately 1993. (Pet. at 7, ¶ 27.) Petitioner resided in the U.S. for the next 33 years without any contact with immigration authorities. (Pet. at 7-8, ¶¶ 30-32.) He is married and has three children, two of whom are U.S. citizens. (Pet. at 8, ¶¶ 33-34.) He works in the construction industry. (Pet. at 8, ¶ 36.) He has no criminal history. (Pet. at 8, ¶ 38; id. at 10, ¶ 66.)

### B. Detention by ICE (Sept. 9, 2026-Present).

On September 9, 2026, Petitioner got in his car at his home to drive to work. (Pet. at 8, ¶ 40.) ICE officers stopped his vehicle. (Pet. at 8, ¶ 41.) According to Petitioner, he "had not committed any traffic violation or engaged in any conduct" that would have "provide[d] a lawful basis for a traffic stop." (Pet. at 8-9, ¶ 42.)

DHS records reflect that ICE Enforcement and Removal Operations ("ERO") officers were conducting a targeted enforcement operation looking for someone named Joel Martinez-Marquez, i.e., not for Petitioner. (Answer Ex. A / Dkt. 9-1 at 2 (DHS Form I-213).) Those records describe the reason for the stop as follows:

> At approximately 0547 hours, officers observed a male fitting the physical description of Martinez-Marquez, Joel exit the target residence driving a white Chevy work truck with Montana Plate # [redacted], later identified as [Petitioner]. [T]here was also an unknown male passenger in the vehicle later identified as Figueroa Santos, Juan. Given the distance officers were from the target residence, and the low light conditions of the morning [the] Officers believed Martinez-Marquez could be inside that vehicle [which] established reasonable suspicion for an investigatory stop.

(Id. at 2-3.)

Petitioner allege that the officers "questioned Petitioner concerning his immigration status." (Pet. at 9, ¶ 45.) Petitioner "provided his identification documents to the officers" when requested; "cooperated"; and "did not attempt to flee, resist, or obstruct their questioning." (Pet. at , ¶¶ 46-47.) The ICE officers took him into custody without "provid[ing] [him] with a meaningful explanation of why immediate physical detention was necessary." (Pet. at 9, ¶¶ 48, 50.)

DHS records describe the stop and decision to detain Petitioner as follows:

> ERO Officers conducted a vehicle stop and approached the vehicle and identified themselves[.] [O]nce at the vehicle ERO Officers asked basic questions regarding identity and alienage[.] [Petitioner] initially refused to identify himself but eventually handed over a Federal Limits Apply CA driver license which is issued to illegal aliens in the state of California[.] ERO Officers also ran record checks and the results returned with no lawful entry records[.] [A]dditionally [Petitioner] was not able to produce any documents that would allow him to enter or remain in the United States and further investigation was warranted and he was detained.
>
> [¶] Once [Petitioner] was taken out of the [C]hevy work truck and placed into the back of a government vehicle [Petitioner] self-admitted that he was illegally in the country[.] The onsite supervisor determined there was probable cause for arrest since [Petitioner] entered the United States illegally and failed to produce any documentation to be present in the United States in violation of 212(a)(6)(A)(i) of the Immigration and Nationality Act ["INA"]. A records query was also conducted on the Mexican Government[']s CURP website and [Petitioner] was located with CURP # [redacted].

(Answer Ex. A / Dkt. 9-1 at 3 (DHS Form I-213).)

"After arriving at the ICE office, Petitioner asked the officers to explain the reasons for his arrest and detention." (Pet. at 9, ¶ 52.) "Petitioner was not informed of any individualized finding that he presented a danger to the community or a risk of flight." (Pet. at 9, ¶ 54.) The DHS Form I-213 states, "ERO Los Angeles will serve [Petitioner] with a Warrant for Arrest of Alien (I-200), Notice to Appear (I-862) ["NTA"], a Notice to Rights and Request for Disposition (I-826), and a Notice of Custody Determination (I-286)" (Answer Ex. A / Dkt. 9-1 at 4), but Respondents have not produced copies of any of these forms.[1] The Form I-213 reflects that Petitioner "claim[ed] fear of returning to his country of citizenship of Mexico." (Answer Ex. A / Dkt. 9-1 at 4 (DHS Form I-213).)

A month later, on October 9, 2026, DHS served Petitioner with an NTA initiating removal proceedings. (Pet. at 10, ¶ 63; Pet. Ex. A / Dkt. 1-3 (the NTA).) The NTA charges Petitioner solely under INA § 212(a)(6)(A)(i), alleging that he is present in the United States without having been admitted or paroled. (Id.)

Petitioner's removal proceedings are ongoing. He currently has a master hearing scheduled for November 3, 2026. See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 246-062-661 (Mexico), last accessed Oct. 28, 2026). He remains in ICE custody in Adelanto, California. See ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 246-062-661 (Mexico), last accessed Oct. 28, 2026). He has never had a bond hearing before an IJ.

**C. Habeas Proceedings.**

Petitioner filed the present Petition on October 20, 2026. (Dkt. 1.) The Petition raises the following claims:

[1] Petitioner did attach a copy of the NTA to his Petition, as discussed further below.

Ground 1: Respondents violated Petitioner's Fifth Amendment procedural due process rights by failing to give him a pre-detention bond hearing before a neutral decisionmaker. (Pet. at 23-25, ¶¶ 123-45.)

Ground 2: Petitioner's detention violates his Fifth Amendment substantive due process rights because he is not a danger to the community or a flight risk. (Pet. at 25-27, ¶¶ 146-64.)

Ground 3: Respondents violated the INA by detaining him without a bond hearing under 8 U.S.C. § 1225(b), when his detention should be governed by § 1226(a). (Pet. at 27-29, ¶¶ 165-79.)

Ground 4: Respondents' detention policy violates the Administrative Procedure Act ("APA") because it is arbitrary and capricious. (Pet. at 29-30, ¶¶ 180-91.)

Ground 5: Respondents violated Petitioner's Fourth Amendment rights and 8 U.S.C. § 1357(a)(2) by arresting him without a warrant. (Pet. at 30-31, ¶¶ 192-98.)

The Petition seeks: (1) a declaration that Petitioner's detention is governed by § 1226(a) rather than § 1225(b); (2) Petitioner's immediate release from custody; and (3) an injunction preventing Petitioner's re-detention without a pre-deprivation hearing. (Pet. at 31-32.) Alternatively, he seeks an individualized bond hearing before a neutral IJ within seven days, at which the government bears the burden of proof by clear and convincing evidence. (Id. at 32.)

Respondents answered the Petition on October 27, 2026. (Dkt. 9.) They argue, "Petitioner does not appear to have requested a bond hearing from the Immigration Court." (Id. at 2.) However, they appear to admit that he is entitled to do so. (Id. at 2-3 (citing Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026) ("Bostock") and noting that § 1226(c) "does not appear" to apply to Petitioner).) They argue that he was not entitled to a pre-deprivation hearing because "in prior cases where courts have found such an argument successful, the

factual scenario was such that the petitioner had been once detained by ICE, released in ICE's discretion, and then re-detained without any process"; here, they argue, Petitioner "entered without inspection and … this is his first inspection and detention by ICE." (Id. at 2.)

Petitioner replied on October 28, 2026. (Dkt. 10.) The Reply argues: (a) Petitioner is entitled to relief on Ground 3, because Respondents concede that Petitioner is not subject to mandatory detention (id. at 3); (b) the Answer "fails to substantively address Petitioner's independent Fourth Amendment claim" in Ground 4 (id. at 8); (c) "Respondents have not established that a valid administrative warrant existed before Petitioner's arrest or that the warrantless arrest satisfied 8 U.S.C. § 1357(a)(2)" (id. at 5); (d) as to Ground 1, "Petitioner's first immigration detention does not extinguish his constitutional liberty interest" (id. at 8); and (e) "the Court should grant immediate release, not merely order a future bond hearing" (id. at 12).

## III. DISCUSSION

### A. Petitioner is Not Entitled to Relief on Ground 1, the Procedural Due Process Claim.

#### 1. Legal Standard.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when

freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

Many district courts have held that noncitizens previously released from DHS custody have a protected liberty interest in remaining out of custody, because "the government's decision to release [them] creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); see also Domingo v. Kaiser, No. 25-cv-05893, 2025 WL 1940179, at *2, 2025 U.S. Dist. LEXIS 133824 at *5-6 (N.D. Cal. July 14, 2025) (collecting cases); Omer G. G. v. Kaiser, 815 F. Supp. 3d 1098, 1106-13 (E.D. Cal. 2025). Even if the noncitizen was not previously detained, district courts sometimes reason that "the government's *knowing* decision not to detain an individual creates a liberty interest in their continued release." Anderson v. Chernut, No. 26-cv-01960-DAD-CKD, 2026 WL 809990, at *2, 2026 U.S. Dist. LEXIS 62410, at *4 (E.D. Cal. Mar. 24, 2026) (emphasis added).

**2. Parties' Arguments.**

The Petition argues that Respondents violated Petitioner's due process rights because he "received no advance notice of an intended custody determination, no individualized pre-deprivation hearing before a neutral decisionmaker, and no meaningful opportunity to present evidence concerning his longstanding residence, family responsibilities, employment, lack of criminal history, or absence of flight

risk." (Pet. at 24, ¶ 132.) Respondents argue that Petitioner "was not entitled to a pre-deprivation hearing because "in prior cases where courts have found such an argument successful, the factual scenario was such that the petitioner had been once detained by ICE, released in ICE's discretion, and then re-detained without any process"; here, they argue, Petitioner "entered without inspection and … this is his first inspection and detention by ICE." (Id. at 2.) Petitioner's Reply "acknowledges that distinction" and "does not claim that DHS previously granted him parole, recognizance, or bond…." (Reply at 9.) He nevertheless argues that he has a "fundamental constitutional interest in freedom from unlawful physical restraint." (Id.)

**3. Analysis.**

On the current record, there is no evidence that immigration authorities were aware of Petitioner's presence in the U.S. prior to his recent ICE arrest on September 9, 2026. Accordingly, this Court cannot say that the government explicitly or implicitly promised to leave Petitioner at liberty. Petitioner has cited no other legal authority establishing that he has a liberty interest, protected by the Fifth Amendment Due Process Clause, in remaining out of custody. Accordingly, he has not demonstrated that he is entitled to relief on Ground 1 of the Petition.

**B. Petitioner is Entitled to Relief on Ground 3, Because He is Not Subject to Detention Under § 1225(b)(2)(A).**

**1. Legal Standard.**

a. Detention under § 1226(a).

8 U.S.C. § 1226(a) "authorizes the federal government to detain aliens pending the completion of their removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1193 (9th Cir. 2022). Detention is not mandatory; the government may either detain the noncitizen or release them on bond or conditional parole. Id. at 1196 (citing 8 U.S.C. § 1226(a)(1)-(2)). "When a person is apprehended under § 1226(a), an ICE officer makes the initial custody

determination." Id. (citing 8 C.F.R. § 236.1(c)(8)). "The alien will be released if he 'demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.'" Id. (quoting 8 C.F.R. § 236.1(c)(8)). "Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final." Id. at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19).

b. Detention under § 1225(b)(2)(A).

While "noncitizens detained under § 1226(a) are entitled to receive bond hearings at the outset of detention," under § 1225(b)(2)(A), applicants for admission "are subject to mandatory detention for proceedings under 8 U.S.C. § 1229(a) and not entitled to the due process protections found within § 1226(a)." Maldonado Bautista v. Santacruz, 813 F. Supp. 3d 1084, 1102 (C.D. Cal. 2025).

c. Ninth Circuit's interpretation of these statutory provisions.

In July 2025, DHS issued a new policy that "require[d] ICE employees to consider anyone arrested in the United States and charged with being inadmissible as an 'applicant for admission' under 8 U.S.C. § 1225(b)(2)(A)." Maldonado Bautista, 813 F. Supp. 3d at 1094. In Bostock, the Ninth Circuit overturned this policy and held that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." 183 F.4th at 1165; see also Maldonado Bautista v. Santacruz, 813 F. Supp. 3d 1084, 1094, 1095 (C.D. Cal. 2025) (certifying "Bond Eligible Class" of noncitizens who entered without inspection, were not apprehended upon arrival, and are not subject to detention under § 1226(c), § 1225(b)(1), or § 1231 when DHS makes an initial custody determination), appeal filed, No. 25-7958 (9th Cir. Dec. 19, 2025).

**2. Analysis.**

Petitioner argues that Respondents violated the INA by detaining him without a bond hearing under § 1225(b), when his detention should be governed by § 1226(a). (Pet. at 27-29, ¶¶ 165-79.) Respondents appear to admit that Petitioner is not subject to mandatory detention under § 1225(b)(2)(A), as interpreted in Bostock, and that he is entitled to a bond hearing under § 1226(a). (Answer at 2-3.)

The proper remedy for this type of claim is an individualized bond hearing, not release from custody. See, e.g., Rathi v. Warden of Desert View Annex Det. Facility, No. 5:26-cv-01174-WLH-AYP, 2026 WL 795298, 2026 U.S. Dist. LEXIS 61360 (C.D. Cal. Mar. 18, 2026); (see also Reply at 3 (admitting that success on this claim "does not automatically establish Petitioner's entitlement to immediate release").) Although Petitioner contends that the government should bear the burden of proof by clear and convincing evidence at this bond hearing, the Petition does not cite any authority to support such a finding. (Pet. at 32, ¶ 10); see generally Rodriguez Diaz v. Garland, 53 F.4th 1189, 1193-94 (9th Cir. 2022) (rejecting § 1226(a) detainee's argument that, under the Due Process Clause of the Fifth Amendment, he was entitled to a second bond hearing at which the government bore the burden of proof by clear and convincing evidence).

The Court declines to order a bond hearing in this case because, as discussed further below, he is entitled to release from custody based on Ground 5 of the Petition. However, the Court will issue declaratory relief finding that Petitioner may not be detained under § 1225(b)(2)(A).

**C. Petitioner is Entitled to Relief on Ground 5, the Claim Challenging His Arrest.**

**1. Legal Standard.**

Because generally "it is not a crime for a removable alien to remain present in the United States," then "[i]f the police stop someone based on nothing more

than possible removability, the usual predicate for an arrest is absent." Arizona v. United States, 567 U.S. 387, 407 (2012). "The federal statutory structure instructs when it is appropriate to arrest an alien during the removal process." Id.

a. Administrative arrest warrant.

"When an alien is suspected of being removable, a federal official issues an administrative document called" an NTA. Arizona, 567 U.S. at 407 (citing 8 U.S.C. § 1229(a) and 8 CFR § 239.1(a)). The NTA "gives the alien information about the proceedings, including the time and date of the removal hearing." Id. (citing 8 U.S.C. § 1229(a)(1)).

The NTA "does not authorize an arrest." Id. The INA provides, "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Immigration regulations provide in relevant part:

> (b) Warrant of arrest—
>
> (1) In general. *At the time of issuance of the [NTA]*, or at any time *thereafter* and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest. A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of 8 CFR chapter I and may be served only by those immigration officers listed in § 287.5(e)(3) of 8 CFR chapter I.
>
> (2) If, after the issuance of a warrant of arrest, a determination is made not to serve it, any officer authorized to issue such warrant may authorize its cancellation.

8 C.F.R. § 1236.1(b) (emphasis added).

Multiple district courts have held that, where an administrative arrest warrant pre-dates an NTA, the warrant is invalid and the noncitizen should be released from custody. See Castanon Nava v. DHS, 806 F. Supp. 3d 823, 853-54

(N.D. Ill. 2025) ("ICE lacked statutory and regulatory authority to engage in its policy of issuing I-200 warrants to collaterals in the field without the concurrent or prior issuance of an NTA."); Landaverde Ardon v. Mina, No. 26-cv-313, 2026 WL 530199, at *3 (M.D. Fla. Feb. 26, 2026) (granting habeas petition and ordering release, reasoning, "Because Respondents arrested Petitioner nearly two weeks before issuing his [NTA], they lacked statutory authority to arrest Petitioner, as removal proceedings were not pending against him at that time."); Arango v. Genalo, No. 25-cv-6720, 2025 WL 3637500, at *2 (E.D.N.Y. Dec. 16, 2025) (granting habeas petition and ordering release, reasoning, "Arango was not served with a I-862 [NTA] until *two days after her arrest*, which was too late. … This Court is not willing to say that two days is within the concept of contemporaneousness. Because Arango was not served with a[n] NTA until *after* her arrest, her due process rights were violated.") (emphasis in original); Gopie v. Lyons, No. 25-cv-05229-SJB, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) ("[T]he Government arrested Gopie on September 15, 2025. … It then issued an NTA *three days later* on September 18, 2025. … In other words, when ICE arrested Gopie they had no authority to do so.") (emphasis in original).[2]

b. Warrantless arrest.

"If no federal warrant has been issued, [federal immigration] officers have more limited authority" to arrest noncitizens under 8 U.S.C. § 1357(a). Arizona v. United States, 567 U.S. 387, 407 (2012). An immigration officer may arrest a noncitizen if the officer "has reason to believe that the alien … is in the United States in violation of … law or regulation and is likely to escape before warrant can be obtained for his arrest…." 8 U.S.C. § 1357(a)(2); see also 8 C.F.R.

---

[2] But see Papikyan v. Semaia, No. 26-cv-1824-SB, 2026 WL 1455139, at *1 (C.D. Cal. May 22, 2026) (concluding that release was not warranted based on the fact that the arrest warrant preceded the NTA); Tsendayush v. Bondi, No. 26-cv-970-SB-KES (C.D. Cal. June 30, 2026) (same).

§ 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained.").

Thus, "a warrantless arrest requires an individualized assessment of the person's flight risk." United Farm Workers v. Noem, 785 F. Supp. 3d 672, 735 (E.D. Cal. 2025) (granting provisional class certification and preliminary injunction because "the evidence shows a pattern and practice of warrantless arrests without Border Patrol agents performing individualized flight risk assessments to have probable cause for the arrest as required").

> In making this determination, courts consider a number of factors that were known by ICE officers at the time of the arrest, including whether the foreign national: (1) was arrested near his home; (2) lacked a known criminal history at the time of his arrest; (3) answered questions posed to him by ICE without incident or evasion; (4) was working in the area; (5) had a stable residence with a spouse, fiancé, and children; (6) had children or other family with proper immigration status; (7) was linked to altered identity documents; (8) had past attempts to flee; and (9) lacked ties to the community, such as family, home, or a job.

Castanon Nava v. Dep't of Homeland Sec., 806 F. Supp. 3d 823, 854 (N.D. Ill. 2025) (collecting district court cases).

**2. Parties' Arguments.**

The Petition argued that Respondents violated Petitioner's Fourth Amendment rights and § 1357(a)(2) by arresting him without a warrant. (Pet. at 30-31, ¶¶ 192-98.) Petitioner argued that, under § 1357(a)(2), "a warrantless immigration arrest must satisfy statutory requirements, including reason to believe that the individual is unlawfully present and likely to escape before a warrant can be obtained"; he argued the officers had no such reason to believe in his case. (Id.

at 31, ¶ 196.) Petitioner argued that the traffic stop violated the Fourth Amendment because he "had committed no traffic violation, and the officers did not identify any specific, articulable facts establishing reasonable suspicion of unlawful activity sufficient to justify the stop." (Id. at 30-31, ¶ 194.)

Respondents' Answer did not address this claim. However, the Answer did attach Petitioner's DHS Form I-213, which described the circumstances of Petitioner's arrest. (Answer Ex. A / Dkt. 9-1.)

Petitioner's Reply argues that the Court should grant this claim as unopposed. (Reply at 8.) They argue that the DHS Form I-213 establishes that Petitioner was arrested without a warrant. (Id. at 5-6.) Regarding the facts described in the DHS Form I-213, Petitioner argues, "The Government's narrative does not adequately explain what objectively verifiable facts connected that particular vehicle or its occupants to Martinez-Marquez [the target of the ICE investigation], beyond proximity and the time of day." (Id. at 4.)

**3. Analysis.**

Petitioner is entitled to relief on this claim because Respondents' Answer fails to contest it. The Court previously warned Respondents, "Failing to file an answer by the due date–or filing an answer that fails to substantively respond to any claim in the petition–may result in the Court granting the petition or claim as unopposed." (Dkt. 6 at 2 (standing order issued on 10/21/26).)

Additionally, the facts alleged in the DHS Form I-213 do not conclusively establish that Petitioner's arrest was legal. The NTA was not issued until a month after Petitioner's arrest. (Pet. Ex. A / Dkt. 1-3 (the NTA)); Landaverde Ardon, 2026 WL 530199, at *3 (granting habeas petition and ordering release, reasoning, "Because Respondents arrested Petitioner nearly two weeks before issuing his [NTA], they lacked statutory authority to arrest Petitioner, as removal proceedings were not pending against him at that time."). Moreover, Respondents have pointed to no facts establishing that Petitioner was likely to abscond before a warrant could

be obtained, given that he was arrested near his home, lacked any known criminal history, had a stable residence, and had substantial ties to the community. See Castanon Nava, 806 F. Supp. 3d at 854.

Accordingly, Petitioner is entitled to relief on Ground 5, including immediate release from immigration custody.

### D. Ground 2, the Substantive Due Process Claim, and Ground 4, the APA Claim, are Dismissed as Moot.

Because Grounds 2 and 4 seek the same relief as Grounds 3 and 5, the claims the Court is granting, there is no further relief the Court can grant on Grounds 2 and 4. Accordingly, these claims are dismissed as moot.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that:

1. Ground 1 of the Petition is denied; Grounds 3 and 5 are granted; and Grounds 2 and 4 are dismissed as moot.
2. Respondents shall **immediately release** Omar Figueroa-Santos (A# 246-062-661) from custody.
3. If Respondents have not released Petitioner **within three (3) days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.
4. Petitioner is not subject to detention under 8 U.S.C. § 1225(b)(2)(A).[3]

DATED: October 28, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

[3] To the extent the Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).